

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Shaoming Song, a/k/a
Cristobal A,[1]
Complainant,

v.

Alex M. Azar II,
Secretary,
Department of Health and Human Services
(National Institutes of Health),
Agency.

Request No. 2019000840

Appeal No. 0120172106

Hearing No. 531-2016-00206X and 531-2017-00040X

Agency No. HHS-NIH-NIA-119-15 and HHS-NIH-NIA-067-16

DECISION ON REQUEST FOR RECONSIDERATION

On October 23, 2018, Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in EEOC Appeal No. 0120172106 (September 19, 2018).

BACKGROUND

Complainant served the Agency as a Visiting Fellow at the National Institute on Aging (NIA), National Institutes of Health (NIH) in Baltimore, Maryland, from September 2006 to September 2011, and thereafter has been unemployed.

On October 14, 2015, Complainant filed equal employment opportunity (EEO) Complaint 1 alleging that he was discriminated against based on his age (55) when:

1. NIH did not respond to his July 2015, request to return as a volunteer.
2. By letter dated September 22, 2015, NIH rejected his request to return as a volunteer.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

On May 19, 2016, Complainant filed EEO Complaint 2 alleging that he was discriminated against based on his age when he learned from the EEO investigation on Complaint 1 that:

3. His pay was reduced from October through December 2006.

4. He was not given monetary awards for his scientific papers that were published on August 6, 2010, September 12, 2011, and March 8, 2012.

Following separate EEO investigations on Complaints 1 and 2, Complainant requested hearings before an Equal Employment Opportunity Commission Administrative Judge (AJ). The complaints were then joined. Thereafter, an AJ issued a decision without a hearing.

The AJ found that Complainant initiated EEO counseling on the matters in Complaint 2 long after the 45-calendar day time limit. He initiated EEO counseling thereon in February 2016. The AJ explained that even if the alleged reduction in pay adversely affected Complainant's subsequent annual stipend rates, his last paycheck from the Agency was in October or November 2011 (and hence the pay discrimination stopped with the last paycheck, years prior to Complainant initiating EEO counseling thereon). For the same reason, the AJ found that Complainant failed to timely initiate EEO counseling on the awards.[2] Accordingly, the AJ dismissed Complaint 2.

The AJ found that Complaint 1 failed to state a claim. The AJ explained that Complaint 1 involved being denied a volunteer opportunity, not employment. Citing Commission case law, the AJ found that EEO complaints on volunteer opportunities only state a claim in narrow circumstances, i.e., where the volunteer receives significant remuneration rather than merely the inconsequential incidents of an otherwise gratuitous relationship, or where the volunteer position often leads to regular employment. The AJ found that Complainant did not meet this test. Accordingly, the AJ dismissed Complaint 1.

When Complainant requested to be a volunteer by email in July 2015, he wrote that he was unemployed since 2011, that publication of scientific papers was the foundation for employment in the research profession, that two officials at NIH suggested he find a volunteer opportunity to facilitate his return to biomedical research, and he hoped that if he volunteered at NIH it would review his scientific papers and, he suggested, pay the publication fees. Complainant later stated that while it was his understanding that NIH did not pay volunteers a salary, it would pay the publication fees for scientific papers accepted by an academic journal, which range from about $200 - $500.[3]

---

[2] The AJ also found that since Complainant's last fellowship term expired on October 1, 2011, he was not entitled to awards for his papers published on September 12, 2011, and March 8, 2012.

[3] One of the above NIH officials, the training director for NIA, stated that she suggested to Complainant that he volunteer at a hospital or university research laboratory to gain experience, learn new techniques and become familiar with employment opportunities there.

The AJ found this nominal publication fee was more appropriately considered an "inconsequential incident" rather than "significant remuneration." The AJ found that while Complainant hoped a volunteer opportunity with NIH would assist him in gaining full-time employment, he provided no evidence that it typically leads to employment (at the Agency).

While the AJ dismissed Complaints 1 and 2 based on these procedural findings, the AJ decided, without further elaboration, that Complainant did not show by a preponderance of the evidence, viewed in the light most favorable to him, that he was unlawfully discriminated against.

The Agency issued a final order fully implementing the AJ's decision. Complainant appealed.

In our appellate decision we concluded, without elaboration, that the AJ correctly determined that the preponderance of the evidence did not establish that Complainant was discriminated against, and we affirmed the Agency's final order adopting the AJ's decision. The instant request followed.

## ANALYSIS AND FINDINGS

EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c).

In his request for reconsideration, Complainant argues that our previous decision did not recite issue 2. Issue 2 was accepted for investigation by the Agency and adjudicated by the AJ. A review of our appellate decision shows Complainant's argument is accurate. However, when the appellate decision upheld the Agency's final order adopting the AJ's decision, it adjudicated all of Complaints 1 and 2. But we will specifically address issues 1 – 4 herein.

EEOC Regulations 29 C.F.R. § 1614.107(a)(2) provides that an agency shall dismiss a complaint that fails to comply with the applicable time limits contained in § 1614.105. Section 1614.105(a)(1) provides that an aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action within 45 days of the effective date of the action. The time limit to seek EEO counseling shall be extended when an individual shows he did not know and reasonably should not have known that the discriminatory action or personnel action occurred. 29 C.F.R. § 1614.105(a)(2).

She added that Complainant was a citizen of Canada, not the United States, and many federal jobs, including being a lab technician, require US citizenship. The Scientific Director of NIA stated that while he rejected Complainant's volunteer request, he offered him the opportunity to submit scientific papers that included NIA work for internal review before Complainant submitted them for publication. The Scientific Director stated that Complainant did not want to do that because submitting papers requires paying fees which Complainant said he could not afford, and he wanted to volunteer so NIA would pay the fee.

4                                                                                           2019000840

On issue 3, which regards pay, Complainant argued on appeal that his annual Internal Revenue Service (IRS) Form 1042-S showed he was underpaid not only for December, November, and December 2006, but for his whole first fellowship year of October 2006 through September 2007. We take administrative notice that the IRS Form 1042-S regards foreign person's U.S. source income subject to withholding.

Regarding the timeliness of 3, Complainant contended that while he felt in 2006 and 2007 that his pay was incorrect, he paid little attention to this, but after reading his former first line supervisor's (S1) affidavit in ROI 1 that he "[i]n no shape or form did I demonstrate bias against him (Complainant)," he started to seriously consider the pay issue. Report of Investigation (ROI) on Complaint 2 (ROI 2), at 34.

On appeal, Complainant recounted the AJ's finding that he did not timely initiate EEO counseling after receiving his last paycheck. Complainant countered that his stipend compensation was electronically deposited into his bank account and he received no paychecks. He also argued that by the time he received an IRS Form 1042-S in February or March 2008 reflecting his prior year's gross income, the 45-calendar day time limit had passed for first fellowship year that ended in September 2007.

On issue 3, we find that Complainant had a reasonable suspicion of discrimination by February or March 2008, when he received the IRS Form 1042-S. He represented that in 2006 and 2007, he felt that his pay was incorrect, and that his IRS Form 1042-S showed he was underpaid during this period. Complainant's seeming contention that he did not form a reasonable suspicion of discrimination until he read S1's affidavit is unpersuasive. S1 did not discuss pay or awards in that affidavit.

Complainant's contention is also unpersuasive because in his January 20, 2017 opposition to the Agency's motion to the AJ to dismiss, he referenced his previous contention that in 2008 or 2009, S1 said to him that it was ridiculous for the lab to have a fellow over age 50, and argued this showed S1 had no intention to support his career – including reducing his pay. Hence, Complainant had a reasonable suspicion of age discrimination years before he read S1's affidavit.

The AJ's finding that the 45-calandar day time limit to initiate EEO counseling would start running from the date of Complainant's last "paycheck" if the alleged lower pay in 2016 adversely affected Complainant's subsequent pay rates throughout his fellowship is not undermined by the fact that Complainant received his pay electronically.

Regarding issue 4, in his investigatory rebuttal affidavit on Complaint 1, Complainant stated as far as he could recall, while he worked at NIA he heard from more than one person that that there was a policy that fellows would receive a monetary award after publishing a paper. ROI 1, at 95, 99. This shows that Complainant was aware he did not receive awards to which he was allegedly entitled years prior to initiating EEO counseling regarding them.

In a follow up motion dated February 22, 2017, to the AJ opposing the Agency's motion to dismiss, Complainant again referred to S1's alleged age bias comment made in 2008 or 2009, and rhetorically asked what other than his age could explain his not receiving awards. Given that Complainant believed he was entitled to these awards while working at NIA, this shows he had a reasonable suspicion of age discrimination about not receiving them years prior to his initiating EEO counseling thereon in February 2016. On request, Complainant disagrees with the AJ's finding that because he was no longer a fellow he was not entitled to an award for his scientific paper that was published on September 12, 2011. Complainant counters that his fellowship had not ended yet. While it ended on October 1, 2011, Complainant does not dispute the AJ's finding that he was not entitled to an award after his fellowship ended. This was years prior to February 2016.[4]

Complainant has not shown that our appellate decision to affirm the Agency's final order adopting the AJ's dismissal of Complaint 2 for failure to timely initiate EEO counseling was clearly erroneous.

In EEOC Compliance Manuel Section 2, "Threshold Issues," No. 915.003, at 2-28 to 2-29 (July 21, 2005), the Commission advises that while volunteers usually are not protected "employees," an individual may be considered an employee of a particular entity if as a result of the volunteer service, she receives benefits such as a pension, group life insurance, and access to professional certification, even if the benefits are provided by a third party. The Commission advises that the benefits constitute "significant remuneration" rather than merely the "inconsequential incidents of an otherwise gratuitous relationship." The Commission also advises that a volunteer may also be covered by EEO statutes if the volunteer work is required for regular employment or regularly leads to regular employment with the same entity because in such situations, discrimination by the employer operates to deny the Complainant of an employment opportunity. Id.

---

[4] Apparently until after he reviewed ROI 2, Complainant was not aware that awards took the form of a raise in the annual renewed stipend - $1,500 if making good progress in their work but no publications, and $2,000 if the fellow had one or two publications. ROI 2, at 320. In the Agency's motion to the AJ to dismiss, it argued that when on August 12, 2010, it funded Complainant's annual stipend for his fifth year, it increased it by $1,500, but could have increased it by $2,000 if Complainant had one or two publications within the past year. In his February 22, 2017, follow up opposition to the above motion to dismiss, Complainant countered that his first paper was published online on August 6, 2010, so he should have gotten a $2,000 increase. Regardless of Complainant's apparent lack of knowledge about the form the awards took and the amounts thereof, we find he untimely initiated EEO counseling on awards. Complainant represented that while he worked at NIA he was aware there was a policy to award fellows who published and that S1 made the age bias remark to him – which he now represents led him to believe not receiving an award for his publications was discriminatory. Assuming the awards would have increased Complainant's rate of pay throughout his fellowship, his EEO contact was untimely for the same reason the AJ found regarding pay.

6                                                                                           2019000840

Applying this law to the facts of this case, we find that Complainant has not shown that our appellate decision to affirm the Agency's final order adopting the AJ's dismissal of Complaint 1 for failure to timely initiate EEO counseling was clearly erroneous.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 0120172106 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

### RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

7                                                                     2019000840

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

*[signature]*
Carlton M. Hadden, Director
Office of Federal Operations

<u>March 26, 2019</u>
Date